Hillsborough
No. 85-465

MICHAEL ELLIOTT

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

October 3, 1986

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*R. David DePuy* and *Carol A. Conboy* on the brief, and *Mr. DePuy* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Exeter (*Debra L. Weiss* on the brief and orally), for the defendant.

BATCHELDER, J.   This interlocutory transfer without ruling from the Superior Court (*Bean*, J.) presents the question whether the employer of an independent contractor is liable to an employee of that independent contractor for injuries the employee suffered as a result of the independent contractor's negligent performance of inherently dangerous work. The defendant argues that our decisions regarding vicarious liability protect it. Additionally, the defendant argues that suit against it as the employer of the independent contractor is precluded by the New Hampshire workers' compensation statute. We hold that the plaintiff has a cause of action against the defendant.

This case arises from a construction accident in an underground cooling tunnel at the Seabrook Nuclear Power Station. The plaintiff, a miner employed by Morrison-Knudsen Company, Inc., the independent contractor, was injured while working in one of the two tunnels. The independent contractor had been hired by the defendant, the principal owner of the power station, to construct the tunnels.

The facts relating to the accident were agreed to by the parties for the purposes of this transfer.

> "On November 9, 1979, Michael Elliott had been employed by Morrison-Knudsen for five months as a miner. He was twenty-two years old. That morning, Mr.

Elliott was working with other miners in conjunction with a Tunnel Boring Machine. Working behind the Tunnel Boring Machine, Mr. Elliott and other miners were 'scaling' the walls in order to remove all the unsecured rock. Scaling is accomplished by striking the walls with long metal poles or picks. The loosened rock then falls to the floor of the tunnel, to be picked up and carted away. A protective structure had been erected over the miners' heads. A Morrison-Knudsen supervisor directed the miners to clear out ('muck up') the rocks which had been knocked to the floor. This order could not be obeyed without the men leaving the protective structure. The parties agree that this order by a Morrison-Knudsen supervisor was improper and that Morrison-Knudsen was negligent.

The miners proceeded into the unsecured area of the tunnel. They were clearing the loose rocks from the floor of the tunnel, as ordered, when loose, overhanging rock from the wall above fell without warning. The rocks fell on Mr. Elliott, knocking him to the ground and injuring him. His right upper arm was broken and he suffered a permanent partial disability of his arm.

Morrison-Knudsen's negligence caused Mr. Elliott's injuries."

After sustaining his injuries, the plaintiff initiated this action in superior court. His writ, as amended, alleged that the defendant is liable for his damages because it "had a non-delegable duty to excavate the tunnels safely and with due care . . . and would be responsible for the negligence of anyone employed by it to undertake said inherently dangerous activity." The plaintiff further alleged that the defendant "failed to exercise due care to see that people and especially miners, such as the plaintiff, were protected from the dangers inherent in such excavation."

Thereafter, the defendant filed, and the trial court denied, a motion to dismiss the action. This transfer followed. For the purposes of this transfer, the parties have stipulated that the activity in question is in fact inherently dangerous.

I. *Inherent Danger And Vicarious Liability*

■ Public Service Company argues first that its liability is cut off by the independent contractor's negligence. The general rule is that an employer is not liable for injuries caused by the negligence of an independent contractor. *See* Annot., 33 A.L.R.2d 7, 18 (1954); *Lamb v. South Unit Jehovah's Witnesses*, 232 Minn. 259, 45 N.W.2d

403 (1950). However, this court has long recognized an exception to this rule when the employer engages the independent contractor to perform inherently dangerous work. *See Stone v. Cheshire Railroad Corporation,* 19 N.H. 427 (1849).

In *Thomas v. Harrington,* 72 N.H. 45, 46–47, 54 A. 285, 286 (1903), we discussed the nature of inherently dangerous work and the issue of liability for injuries resulting therefrom:

> "The danger arose directly from the work which [the defendants] required to be done, and not from the negligent manner of its performance. In such a case, one cannot avoid responsibility for the consequences naturally to be apprehended in the course of the performance of the work, by employing another to do the work as an independent contractor. Upon the modern authorities, the question of liability, under such circumstances, does not depend upon an inquiry whether the parties sustain the relation of master and servant, or whether the contract between them makes the employee an independent contractor. The employer cannot absolve himself from the duty which under the law he owes to another with reference to the performance of work which is dangerous in itself."

Thus, the court recognized the general rule that one who undertakes an inherently dangerous activity has a non-delegable duty to protect third parties against injury resulting from that activity. *Accord* Annot., 23 A.L.R. 1084, 1085, 1089–1093 (1923); Restatement (Second) of Torts § 416, comment *c* (1965) (hereinafter Restatement).

The defendant recognizes these rules, but argues that an employee of the independent contractor, as distinguished from an unrelated individual, may not sue the principal employer for injuries resulting from inherently dangerous work. Several courts have found a crucial distinction between employees of independent contractors, on the one hand, and unrelated individuals, on the other. *See* Restatement, *supra* §§ 416, 427; *see, e.g., Vertentes v. Barletta Co., Inc.,* 392 Mass. 165, 169–170, 466 N.E.2d 500, 502–03 (1984). Nevertheless, we do not find such a distinction to be warranted.

> "The broad theory has also been propounded that the doctrine which imposes upon the principal employer an enlarged liability in respect of inherently dangerous work does not inure to the benefit of a servant of a contractor. The reasoning by which this theory was supported is far

from satisfactory. Its unsoundness seems to be conclusively indicated by the consideration that, so far as the principal employer is concerned, the servant of a contractor is a member of the public, and as such entitled to enforce his remedial rights on the same footing as other persons belonging to that category."

Annot., 23 A.L.R. 1084, 1133–34 (1923); *see id.* at 1129; *accord Van Arsdale v. Hollinger*, 68 Cal. 2d 245, 66 Cal. Rptr. 20, 437 P.2d 508 (1986); *Vannoy v. City of Warren*, 15 Mich. App. 158, 166 N.W.2d 486 (1969). *Contra Tauscher v. Puget Sound Power & Light Co.*, 96 Wash. 409, 635 P.2d 426 (1981).

In *Stevens v. United Gas and Electric Company*, 73 N.H. 159, 60 A. 848 (1905), this court addressed a situation in which the injured party was an employee of an independent contractor: "The correct principle is that the landowner is responsible to invitees upon the premises who suffer injuries from a nuisance created on his land, when that result was reasonably to be apprehended from the usual and ordinary method of doing the work contracted for." *Id.* at 166, 60 A. at 852 (citing *Thomas supra*). The court further stated that the employee "was there at the request of the defendant and for the immediate benefit and advantage of the defendant. The fact that he was a servant of the contractor . . . did not relieve the defendant from the performance of any duty it owed him as an invitee." *Id.* at 168, 60 A. at 852 (citation omitted).

The *Stevens* court concluded that:

"[t]he duty imposed by law upon the defendant, as the owner and occupier of the premises, for the reasonable protection of its invitee, is not performed by an attempted delegation of it to a third party. It is a non-delegable duty, arising from the proprietor's control of the premises. . . . '[W]here the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him. He may bargain with the contractor that he shall perform the duty, and stipulate for an indemnity from him if it is not performed, but he cannot thereby relieve himself from liability to those injured by the failure to perform it.'"

*Id.* at 169, 60 A. at 853 (citations omitted).

■ We find the rationale of *Stevens* to be controlling. As the parties have stipulated for the purposes of this appeal, the defendant undertook an inherently dangerous activity, and the plaintiff's

injury was caused by precisely the threat inherent in that activity. We hold, therefore, that an employee of an independent contractor has a cause of action against the principal employer for injuries suffered in the course of performing inherently dangerous work, even if the independent contractor's negligence caused the injury. A defendant who undertakes an inherently dangerous activity cannot expect immunity from liability when the party to whom he entrusted the dangerous activity fails to prevent the realization of the known threat.

## II. *Application Of The Workers' Compensation Statute*

New Hampshire's workers' compensation statute does not bar the present action. RSA 281:12 (Supp. 1985) states that an employee waives all rights of action at common law or by statute or otherwise against his employer or his employer's insurance carrier. In conjunction with RSA 281:12, RSA 281:14 (1977 & Supp. 1985) specifically authorizes suits against other parties who are not immunized by RSA 281:12. The defendant asserts that it has paid the plaintiff's workers' compensation insurance premiums and, therefore, is protected by RSA 281:12. However, the defendant does not claim to have paid the premiums directly, but rather only to have paid them indirectly by absorbing the independent contractor's insurance costs in the contract price between them.

The question, then, is whether the defendant, by virtue solely of its indirect payment of the plaintiff's workers' compensation premiums, is an immunized party within the contemplation of RSA 281:12. The question is resolved by applying both the broad policy and the specific holding of *Prive v. M. W. Goodell Construction Co., Inc.*, 119 N.H. 914, 409 A.2d 1149 (1979). In *Prive*, we declared the policy that "if there is no strong reason of compensation policy for destroying common-law rights as to various classes of third parties, then, every presumption should be on the side of preserving those rights, once basic compensation protection has been assured." *Id.* at 917–18, 409 A.2d at 1151 (quoting from 2A A. LARSON, WORKMEN'S COMPENSATION LAW § 72.50 (1979)). No express statutory waiver or bar applies to the plaintiff in the present circumstances.

The specific holding in *Prive* further clarifies the present dispute. *Prive* held that a contractor who directly pays the workers' compensation premiums to cover its uninsured subcontractor is not immunized against suit by the workers' compensation scheme. Although, in *Prive*, the contractor, unlike the defendant in this case, was obligated by RSA 281:4-a (1977) to pay the premium, that distinction is irrelevant to the holding that payment of premiums alone

will not make a defendant an employer within the scope of RSA 281:12. It follows from the fact that direct payment fails to bring a defendant within the scope of RSA 281:12, that mere indirect payment must also fail to do so. Consequently, the Public Service Company must be treated in this case as "some person other than a person against whom action has been barred under RSA 281:12," whom RSA 281:14 permits to be sued.

■ In the past, this court has determined that whether an activity is inherently dangerous is a question of fact to be determined by the trier of fact. *See Carr v. Merrimack Farmers Exchange, Inc.*, 101 N.H. 445, 146 A.2d 276 (1958); *Nashua Gummed & Coated Paper Co. v. Noyes Buick Co.*, 93 N.H. 348, 41 A.2d 920 (1945); *Canney v. Rochester Agricultural and Mechanical Association*, 76 N.H. 60, 79 A. 517 (1911). Thus, on remand the parties may litigate that issue, as they will of course no longer be bound by their stipulation made only for purposes of this appeal.

*Remanded.*

All concurred.