CHESTER P. ORTH v. SHIELY PETTER
CRUSHED STONE COMPANY AND ANOTHER.
STATE TREASURER, CUSTODIAN OF SPECIAL
COMPENSATION FUND.

104 N. W. (2d) 512.

July 29, 1960—No. 37,973.

*McLeod & Gilmore*, for relators.
*Ralph Foster*, for respondent.

NELSON, JUSTICE.

Writ of certiorari upon the relation of employer and insurer to review a decision of the Industrial Commission.

The employee, Chester P. Orth, sustained severe injuries in an accident while in the employ of Shiely Petter Crushed Stone Company on June 18, 1949. He was employed under a Minnesota contract of hire at a 6-day weekly wage in excess of $50 and sustained concurrent injuries resulting in concurrent disabilities in a single accident and lost by amputation 100 percent of his right arm, 100 percent of his left leg, and 100 percent of his right foot and ankle. He has not since been able to return to any employment and, admittedly, is permanently and totally disabled.

The employer and insurer recognized liability and have paid compensation to employee for permanent total disability in the sum of $10,000 and, in addition thereto, all hospital and medical bills. The record indicates that they have agreed to pay the wife of this employee the sum of $50 per week to provide nursing services for said employee and to pay such additional medical and other treatments as may be reasonably necessary due to said accidental injuries.

Employee thereafter made claim against the special compensation fund for an additional $5,000 pursuant to provisions of M. S. A. 176.13(e). At the time of the hearing before the commission, employee had received compensation from the fund to the extent of $3,226.51.

The employee, on July 26, 1958, filed a petition against employer and insurer claiming compensation in the amount of $17,550, rather than $10,000, payment of which had been concluded on July 24,

1956, and had been intended as full compensation for employee's permanent and total disability. Employee bases his claim upon the theory that he is entitled to the total of the amounts of the payments provided for a healing period and for the several specific concurrent permanent partial disabilities that he has suffered as the result of a single accident pursuant to the statutory provisions in force when the injury occurred; namely, M. S. A. 1945, § 176.11, subd. 3 and subd. 3(19, 36).

The referee awarded employee compensation benefits as follows: 50 weeks healing period at the weekly rate of $27, totaling $1,350; 600 weeks at the weekly rate of $27, or a total of $16,200, representing total loss of right arm, total loss of right foot and ankle, and total loss of left leg, pursuant to the schedules in § 176.11, subd. 3(19, 36); resulting in a total of $17,550, of which $10,000 has heretofore been paid for total disability, leaving a balance of $7,550. The referee ordered payment accordingly with costs and disbursements and the commission affirmed.

Employer and insurer contend that the employer's obligation to the employee cannot be more than $10,000; that such amount is the limit of liability payable to an employee who has suffered permanent total disability; and that the schedules in § 176.11, subd. 3(19, 36, 39), are limited and confined to payments where an employee has suffered permanent partial disability, not permanent total disability under § 176.11, subd. 4.

The injuries producing the disability herein are governed by L. 1947, c. 611, entitled "An act relating to benefits under the workmen's compensation law; amending Minnesota Statutes 1945, Section 176.11, Subdivisions 1, 3, and 4; and Section 176.12, Subdivisions 18, 19, and 20," and other provisions of § 176.11 not amended.[1]

---

[1]The commission refers to L. 1949, c. 540, and quotes therefrom in discussing what it considers to be the applicable provisions of the Workmen's Compensation Act to be applied in the instant case. Chapter 540 was approved April 21, 1949, but § 6 thereof provides that the act shall take effect July 1, 1949. The accident resulting in the employee's injuries herein occurred on June 18, 1949, prior to the effective date of c. 540. Section

Section 176.11, subd. 3, provided:

"For the permanent partial disability from the loss of a member the compensation during the healing period, but not exceeding 15 weeks, shall be 66 2/3 per cent of the difference between the daily wage of the workman at the time of injury and the wages he is able to earn, if any, in his partially disabled condition, unless on application to the commission, made in the manner provided in section 19 for additional medical service, the period is extended by the commission for not to exceed an additional 35 weeks; *and thereafter and in addition thereto, compensation shall be that named in the following schedule:*" (Italics supplied.)

Section 176.11, subd. 3(19), provided:

"For the loss of a leg so close to the hip that no effective artificial member can be used, 66 2/3 per cent of the daily wage at the time of injury during 200 weeks;"

Section 176.11, subd. 3(36), provided:

"For the loss of one arm and one foot, 66 2/3 per cent of the daily wage at the time of injury during 400 weeks;"

Section 176.11, subd. 3(39), as amended by L. 1947, c. 611, § 2, provided:

"When an employee sustains concurrent injuries resulting in concurrent disabilities, he shall receive compensation only for the injury which entitles him to the largest amount of compensation, *but this does not affect liability * * * for the concurrent loss of more than one member, for which members compensations are provided in the specific schedule and in subdivision 5;*" (Italics supplied.)

Section 176.11, subd. 5, provided:

"The total and permanent loss of the sight of both eyes, the loss of both arms at the shoulder, the loss of both legs so close to the hips

---

176.11, subd. 5, was not amended by L. 1947, c. 611, or any later act. The findings and the opinion of the commission are not affected by the fact that reference was made to L. 1949, c. 540.

that no effective artificial members can be used, complete and permanent paralysis, total and permanent loss of mental faculties, or any other injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability."

Section 176.11, subd. 4, as amended by L. 1947, c. 611, § 3, provided in part:

"For permanent total disability, as defined in subdivision 5, 66 2/3 per cent of the daily wage at the time of the injury, subject to a maximum compensation of $27.00 per week and a minimum compensation of $13.50 per week. If, at the time of the injury, the employee receives wages of $13.50 or less per week, he shall receive the full amount of his wages per week. This compensation shall be paid during the permanent total disability of the injured person, but the total amount payable under this subdivision shall not exceed $10,000 in any case. Payments shall be made at the intervals when the wage was payable as nearly as may be."

The employer and insurer contend that employee has been fully paid by the receipt of $10,000 relying on the limitation contained in § 176.11, subd. 4.

The main question presented is whether employee herein is limited to compensation from the insurer in the sum of $10,000 and an additional $5,000 from the special compensation fund, the maximum allowable for permanent total disability, or whether employee may elect to receive compensation based upon the specific schedule applicable to permanent partial disability (§ 176.11, subd. 3) for concurrent loss of more than one member plus the healing period, and in addition thereto to receive $5,000 from the special compensation fund.

The referee in his memorandum stated that the portions of the Minnesota Workmen's Compensation Act which he applied in the instant case do not prohibit the employee from recovering under the schedule referred to in § 176.11, subd. 3 and subd. 3(19, 36), since under subd. 3(39) he is entitled to receive compensation for the injury which entitles him to the largest amount of compensation resulting

from his single accident on the basis and for the reason that the language in this subsection provided that the injured employee "shall receive compensation only for the injury which entitles him to the largest amount of compensation, but this does not affect *liability* \* \* \* *for the concurrent loss of more than one member, for which members compensations are provided in the specific schedule and in subdivision 5."* (Italics supplied.) Subd. 5, as has already been noted, provided what should constitute total disability. No mention was made of subd. 4 in subsection (39). Subd. 4 provided that the compensation referred to therein payable for permanent total disability, as defined in § 176.11, subd. 5, should be paid "during the permanent total disability of the injured person, but the total amount payable under this subdivision shall not exceed $10,000 in any case, payments to be made at the intervals when the wage was payable as nearly as may be." This limitation was eliminated from subd. 4 by L. 1953, c. 755, § 10, but the statement "For permanent total disability, as defined in subdivision 5," remained at the beginning of subd. 4. While subd. 5 is referred to in subsection (39), no reference is made therein to subd. 4. It is clear that under subsection (39) the injured employee is entitled to receive compensation for the injury which entitles him to the largest amount of compensation, and that section states that while he shall receive compensation only for the injury which entitles him to the largest amount of compensation, that statement is modified by the further statement, "but this does not affect liability \* \* \* for the concurrent loss of more than one member, for which members compensations are provided in the specific schedule and in subdivision 5." The foregoing provisions, however, contained within § 176.11, subd. 3, are only concerned with permanent partial disability, and § 176.11, subd. 4, with permanent total disability.

No case exactly in point has been submitted by either side. Employee relies on In re Hellie v. American Ry. Exp. Co. 157 Minn. 456, 196 N. W. 566, 2 Minn. W. C. D. 126, and Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338, 13 Minn. W. C. D. 228, to support his theory of recovery.

The questions presented here on review are questions of law and involve statutory construction.

The referee took the position that § 176.11, subd. 3(39), is controlling and that the provision in § 176.11, subd. 4, to the effect that the compensation therein provided for "shall be paid during the permanent total disability of the injured person, but the total amount payable under this subdivision shall not exceed $10,000 in any case" does not prohibit employee from recovering under the applicable specific schedules which in this instance would provide the largest amount of compensation for the injuries he received in the single accident.

It is conceded in this case that we are dealing with permanent total disability. Section 176.11 and the schedule constituting subd. 3 thereof deals entirely with permanent partial disability. Section 176.11, subd. 4, deals entirely with permanent total disability and provides the compensation therefor. While it is true that subd. 3(39) provides that where an employee sustains concurrent injury, resulting in concurrent disabilities, he may, in some cases, recover compensation based upon the multiplication of the number of individual injuries sustained, this schedule is confined to the situation where the employee has suffered permanent partial disability. Section 176.11, subd. 5, defines certain injuries which constitute total disability. Section 176.11, subd. 3(39), does refer to the injuries described in § 176.11, subd. 5, but the loss of members for which compensation is provided in said subd. 5, and the members involved in the injury in the case now before us, is not specifically described in said subd. 5. It would only be by reading the last clause into § 176.11, subd. 3(39), that the construction placed upon the compensation statutes here could possibly be sustained. It seems to us, however, if we start out with the assumption that we are dealing with a permanent total disability, there is no escape from the fact that recovery is limited by § 176.11, subd. 4.

We have already referred to the amendment of the Workmen's Compensation Act, L. 1953, c. 755. If we take into account the 1953 amendment of the act and references made thereto, the foregoing statutes will permit of no other construction. Section 176.11 was re-

pealed by the amending act. M. S. A. 176.101, subd. 3(40), of the amended act is substantially identical with the former § 176.11, subd. 3(39). Surely, under § 176.101, subd. 4, of the amended act, which again deals with permanent total disability, it could not be argued that § 176.101, subd. 3(40), has any application to permanent total disability, because under said subd. 4 of the amended act payments are made so long as permanent total disability continues. The only limitation there is that, after $18,000 has been paid, old age and survivors insurance benefits collectible by the recipient are credited on compensation benefits. If we refer to § 176.13(e), it becomes quite clear that the legislature had in mind that prior to the amendment of the compensation act in 1953 the maximum collectible for permanent total disability was $10,000 from the employer and $5,000 from the special compensation fund. After that amendment, nothing is payable for permanent total disability from the special compensation fund under said subd. 4 except as provided therein, this obviously for the reason that the $10,000 limitation shall no longer apply to such injuries occurring after July 1, 1953. It seems to us that, if we seek to ascertain legislative intent by reference to the 1953 amendment of the Workmen's Compensation Act, such amended act establishes conclusively that the legislature considered at all times that compensation for permanent total disability was governed by § 176.11, subd. 4, of the prior act.

We cannot escape the conclusion that in the instant case recovery for permanent total disability is limited to the provisions contained in the prior statute, § 176.11, subd. 4, and that therefore the money compensation payable to the employee herein is limited to $10,000 under said subd. 4 for permanent total disability and the sum of $5,000 from the special compensation fund.

The custodian of the special compensation fund is not the employer's indemnitor for compensation paid nor does he insure employer against workmen's compensation claims. Wandersee v. Brellenthin Chevrolet Co. 258 Minn. 19, 102 N. W. (2d) 514; Orth v. Shiely Petter Crushed Stone Co. 253 Minn. 142, 91 N. W. (2d) 463.

Whether total disability benefits are to be paid out of special com-

pensation funds rests solely in the sound discretion of the Industrial Commission. The state treasurer, as custodian, is possessed of no discretionary power but is vested only with a ministerial duty to disburse proceeds of the fund as directed by the Industrial Commission. Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 45 N. W. (2d) 640.

Since there must be a reversal for the reasons herein stated, no issue remains with reference to the payment ordered by the commission from the special compensation fund.

The decision of the Industrial Commission is reversed and remanded for the entry of findings in harmony with this decision.

Reversed and remanded.