Linda KLEMETSEN as trustee for the
heirs of Mylan Klemetsen,
Deceased, Appellant,

v.

STENBERG CONSTRUCTION COMPA-
NY, INC., Defendant and Third
Party Plaintiff, Respondent,

City of International Falls, Defendant
and Third Party Plaintiff,
Respondent,

v.

Ronnie A. NELSON, d.b.a. Nelson Exca-
vating Company, Third Party
Defendant, Respondent.

No. C4-87-543.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Granted Nov. 13, 1987.

David J. Moskal, Peter H. Berge, Schwe-
bel, Goetz & Sieben, P.A., Minneapolis, for
Linda Klemetsen.

Wayne D. Tritbough, Chadwick, Johnson
& Condon, P.A., Minneapolis, for Stenberg
Const.

Merlyn C. Green, St. Paul, for City of
International Falls.

Richard C. Mollin, Jr., International
Falls, for Ronnie A. Nelson.

Heard, considered and decided by
POPOVICH, C.J., and FOLEY and
HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Linda Klemetsen, as trustee
for the heirs of Mylan Klemetsen, appeals
from a judgment dismissing respondent
Stenberg Construction Co., Inc., in this
wrongful death action. Mylan Klemetsen
was killed in a construction accident at a
housing development owned by respondent.
In a proceeding before the workers' com-
pensation court, respondent was ordered to
make payments as an intermediate or gen-
eral contractor under the workers' compen-
sation statutes. The trial court granted
respondent's subsequent motion for sum-
mary judgment in this action. Appellant
argues that the trial court erred in declar-
ing respondent immune from civil suit. We
reverse and remand for trial on the merits.

## FACTS

Mylan Klemetsen was killed when a
trench being excavated as part of a hous-
ing construction project collapsed. His em-
ployer, Ronnie Nelson Excavating Co. (Nel-
son), was a subcontractor to the developer,
respondent Stenberg Construction Co., Inc.
(Stenberg). Linda Klemetsen (Klemetsen),

as trustee for the heirs of Mylan Klemetsen, commenced this wrongful death action, naming Stenberg and others as defendants.

Workers' compensation benefits were also sought. However, Nelson did not carry workers' compensation insurance. Stenberg made the payments but alleged in a workers' compensation court proceeding that it was not an intermediate or general contractor and that the Special Compensation Fund was therefore liable. The workers' compensation judge observed:

4. * * * The only issues are whether the Special Compensation Fund should pay (Minn.Stat. § 176.183, subd. 1) or whether Stenberg Construction Company is an intermediate or general contractor and should pay (Minn.Stat. § 176.215, subd. 1).

5. Stenberg Construction Company was an intermediate or general contractor on [the date of the accident].

The trial court in granting summary judgment to respondent in the wrongful death action commenced by appellant stated:

Having elected to accept compensation from Stenberg Construction Company as a "statutory employer," Klemetsen's heirs are barred from maintaining a suit for damages at common law.

The court noted that "there is no just reason for delay in entry of judgment." Judgment was entered and this appeal resulted.

## ISSUE

Did the trial court err in concluding that a general or intermediate contractor who pays workers' compensation benefits to the dependents of an employee of a subcontractor is immune from suit?

## ANALYSIS

We find no case law in Minnesota which directly addresses the issue raised by appellant We, therefore, must look to relevant sections of Chapter 176 (1982) of Minnesota Statutes and case law of foreign jurisdictions to assist us.

The workers' compensation court recognized that Nelson had no insurance and, in

addressing the compensation request brought by appellant, the court considered whether appellant would receive compensation pursuant to Minn.Stat. § 176.183, subd. 1 (Supp.1983) or Minn.Stat. § 176.215, subd. 1 (1982). Those two sections read in relevant part:

**176.183.**

Subdivision 1. When any employee sustains an injury arising out of and in the course of employment while in the employ of an employer * * * not insured or self-insured as provided for in this chapter, the employee or the employee's dependents shall nevertheless receive benefits as provided for in this chapter from the special compensation fund, and the commissioner has a cause of action against the employer for reimbursement * * *. There shall be no payment from the special compensation fund if there is liability for the injury under the provisions of section 176.215, by an insurer or self-insurer.

**176.215**

**Subdivision 1. Liability for payment of compensation.** Where a subcontractor fails to comply with this chapter, the general contractor, or intermediate contractor, or subcontractor is liable for payment of all compensation due an employee of a subsequent subcontractor who is engaged in work upon the subject matter of the contract.

The workers' compensation court decided that "[respondent] was an intermediate or general contractor." Thus, respondent became liable for payment of workers' compensation to appellant pursuant to the provisions of section 176.215, subd. 1.

In the wrongful death action subsequently commenced by appellant, the trial court granted summary judgment to respondent on the basis of appellant's election to receive benefits under the provisions of Minn. Stat. Chapter 176. Central to the trial court's determination is Minn.Stat. § 176.031 (1982) which reads in relevant part:

The liability of an employer prescribed by this chapter is exclusive and in the

place of any other liability to * * * [the] surviving spouse, * * *. If an employer * * * fails to insure or self-insure his liability for compensation to his injured employees and their dependents, * * * any dependent may elect to claim compensation under this chapter or to maintain an action in the courts for damages on account of such injury or death.

In awarding summary judgment to respondent, the trial court in effect declared section 176.031 to be both applicable and dispositive against appellant. We agree with the trial court that there was an election of remedies made by appellant. We conclude, however, that under the terms of section 176.031 such election could be made only against Nelson, the actual employer. Section 176.031 has no application to respondent, and therefore cannot be dispositive of the issue before this court on appeal. Respondent urges, nonetheless, that because it is required to pay compensation pursuant to section 176.215, it must be considered to be the "employer" under all sections of Chapter 176 and especially the provisions of 176.031 which would immunize it from civil suit. We find no authority to support respondent's argument on this point.

Minn.Stat. § 176.011, subd 10, defines employer as "any person who employs another to perform services for hire." Respondent did not directly employ Mylan Klemetsen. Respondent contracted with Nelson, who employed Mylan Klemetsen. In determining whether there is an employer-employee relationship, the courts have identified several factors to be considered:

It is conceded that the factors applied in testing the relationship are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of materials or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.

*Guhlke v. Roberts Truck Lines,* 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964). Respondent makes no allegation that its relationship with Klemetsen satisfied these factors. Instead, respondent describes itself as a "statutory employer" and would read that term into the section 176.031 grant of immunity to employers.

The supreme court has recognized section 176.215, subd. 1, as a "statutory employer" law, but it has also noted that this state's law is narrower than that of many other states. *Guhlke,* 268 Minn. at 148, 128 N.W.2d at 329. In examining the scope of Minnesota's law, it is significant that subdivision 2 of section 176.215 provides a right of subrogation:

A person who has paid compensation under this section is subrogated to the rights of the injured employee against the employee's immediate employer, or any person whose liability for compensation payment to the employee is prior to the liability of the person who paid it.

Minn.Stat. § 176.215, subd. 2. The subrogation subdivision differentiates between the person who pays compensation under the section and an employer, indicating that the legislature considered there to be a difference between a "statutory employer" and an "employer."

Next, respondent cites cases from several foreign jurisdictions which immunize a contractor in respondent's position from any tort liability to an injured employee. We note initially that those cases construed statutory provisions different from Minnesota's. The cited cases include: *Brown v. Cities Service Oil Co.,* 733 F.2d 1156 (5th Cir.1984) (Louisiana "statutory employer" section is based on a principal-agent relationship which allows the employer to step out of the picture with the principal assuming liability); *Mid–Continent Pipe Line Co. v. Wilkerson,* 200 Okl. 335, 193 P.2d 586 (1948) (Oklahoma statute makes the principal liable for the worker's injuries where he has failed to require the subcontractor's compliance with the statute); *Jackson v. J.B. Rush Construction Co., Inc.,* 134 Ga.App. 445, 214 S.E.2d 710 (1975) (based on Georgia law, where no mention is made in the opinion of the general contractor's subrogation rights against the subcontractor). Also, in some instances the contractor was deemed to be the actual employer of the subcontractor's employee

and, as such, would not be subject to tort liability to such an employee even if the subcontractor had paid workers' compensation. We do not believe Minnesota law would so limit appellant if Nelson had, in fact, paid workers' compensation. *See, e.g., Lambertson v. Cincinnati Corporation*, 312 Minn. 114, 257 N.W.2d 679 (1977). Furthermore, there is no serious allegation that Klemetsen was, in fact, an employee of respondent, nor that he was engaged in common activity with respondent's employees. *See Peterson v. Kludt*, 317 N.W.2d 43 (Minn.1982) (common activities of employees not common activities of employers important in determination of "common activity"); *see also Kaiser v. Northern States Power Company*, 353 N.W.2d 899 (Minn. 1984) (where two employers perform different activities and where the performance of these jobs is only generally related, the "common activity" requirement is not met). Therefore, we find those cases cited by respondent in an effort to qualify itself for all of the protections of an actual employer to be of little assistance.

.A case with possible applicability, however, is *Dagenhardt v. Special Machine & Engineering, Inc.*, 418 Mich. 520, 345 N.W. 2d 164 (1984). In *Dagenhardt*, the Michigan Court of Appeals had ruled that a worker could sue in tort a contractor who had paid workers' compensation that an uninsured subcontractor had failed to provide. On appeal, a deeply divided Michigan Supreme Court reversed, and granted to the contractor the immunity enjoyed by an employer. Three of the seven members of the Michigan Supreme Court voted to reverse the court of appeals; one member concurred specially stating:

> I concur in the result * * * because [worker] does not dispute [contractor's] representation that [worker] made a claim for worker's disability benefits from [contractor].

*Dagenhardt*, 418 Mich. at 535, 345 N.W.2d at 169. Three voted to affirm the court of appeals. The court of appeals was re-

versed because the Michigan statute provided that:

> if compensation is claimed from * * * the principal, then, in the application of this act, reference to the principal *shall* be substituted for reference to the employer.

M.C.L. § 418.171(1) (emphasis added). *Dagenhardt*, 418 Mich. at 526 and 530, 345 N.W.2d at 165 and 167. Section 176.215 of Minnesota Statutes makes no such mandate.[1] Indeed, the special concurrence in *Dagenhardt* invoked the spirit of M.C.L. § 418.171(1) and an inference can be made that had the Michigan Supreme Court been interpreting statutory language similar to that in Minnesota, the result in *Dagenhardt* may indeed have been 4–3 to affirm the court of appeals.

We find the analysis of the *Dagenhardt* dissenters to be persuasive. Initially, we note that they addressed an issue which is troublesome in this case:

> The construction placed on the act in the majority opinion deprives a worker injured in the employ of an uninsured subcontractor and no other injured worker of the benefit of a greater recovery obtainable in a tort action * * *.

*Dagenhardt*, 418 Mich. at 557, 345 N.W.2d at 180.

Here, upon affirmance of the summary judgment for respondent, appellant would be deprived of the ability to bring suit against a potential defendant solely because of the happenstance of Klemetsen's employment by an uninsured subcontractor. Moreover, a grant of immunity in circumstances such as those before us would create an incentive to general contractors to engage uninsured subcontractors. We do not believe the legislature intended such a result.

If respondent had been unavailable for payment of workers' compensation under section 176.215, appellant would have been eligible to receive benefits from the Special Fund (section 176.183). We conclude, therefore, that under the statutory provi-

---

**1.** The dissent assumes that the general contractor in this case substitutes for the "employer" under Chapter 176 and relies on case law hold-ing an employer who has paid benefits pursuant to the chapter immune from tort liability.

sions of Chapter 176, respondent replaced not Nelson, the subcontractor, but the Special Fund as provider of workers' compensation benefits.[2] Additionally, respondent, like the Special Fund, has a subrogation right against the sub-contractor for the payments made. Furthermore, we believe the legislative policy is best served in this matter by assuring that any disadvantage[3] falls upon the contractor rather than upon the employee.

Finally, we recognize, as did the dissenters in *Dagenhardt,* that respondent, and all contractors similarly situated, are not powerless to avoid the disadvantageous consequences of section 176.215:

> A contractor can protect himself from being called upon to pay workers' compensation benefits to an employee of an uninsured subcontractor by requiring the subcontractor, at the time the subcontractor enters into an agreement with the contractor, to provide continuing evidence that the subcontractor is insured for workers' compensation liability.

*Dagenhardt,* 418 Mich. at 561, 345 N.W.2d at 182–83.

Respondent's failure to ascertain that Nelson was properly insured should not be rewarded. Immunization of respondent from potential liability as a defendant in appellant's lawsuit would not only serve as such a reward,[4] but would also result in substantial prejudice to appellant.

### DECISION

Reversed and remanded for trial on the merits.

FOLEY, Judge (dissenting).

I respectfully dissent. The majority imposes liability on Stenberg beyond what is set forth in the Workers' Compensation Act. The purpose of the workers' compensation statute is to limit the liabilities and remedies of the employer as well as the employee. In *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679 (1977), the Minnesota Supreme Court stated:

> Worker's Compensation * * * subjects almost all employers and employees to an essentially nonfault recovery system for accidents arising out of and in the course of employment. *In exchange for guaranteed compensation* for injury regardless of his own fault or solvency of at-fault fellow employees, *the employee is limited to a fixed schedule of recovery and gives up any right to a common-law action against the employer.*

*Id.* at 120–21, 257 N.W.2d at 684 (emphasis added).

Here, Stenberg has paid workers' compensation benefits to Klemetsen pursuant to Minn.Stat. § 176.215, subd. 1, because its subcontractor was uninsured. Klemetsen now seeks to sue Stenberg in tort. If Stenberg had been Mylan Klemetsen's actual employer and not just his "statutory employer," she clearly would not be allowed to bring a wrongful death action against Stenberg. Minn.Stat. § 176.031. Yet the majority wants to carve out an exception to allow Klemetsen to do so, because they are troubled by the fact that "appellant would be deprived of the ability to bring suit against a potential defendant solely because of the happenstance of Klemetsen's employment by an uninsured subcontractor." I, however, am troubled by the fact that Stenberg is, under the majority's analysis, subject to double liability. While I recognize it is within a general contractor's power to make certain that it's subcontractor is insured, I do not think the imposition of double liability on Stenberg is just and equitable.

---

**2.** The dissent does not address this issue.

**3.** A disadvantage which may be temporary in view of the subrogation provisions of section 176.215 and the fact that any tort action recovery against respondent would be subject to reduction for amounts paid in workers' compensation benefits.

**4.** Respondent argues that the application of *Lambertson* would prevent any benefit accruing to respondent because of its immunity from suit by appellant. While, indeed, respondent would be subject within limits to the contribution provisions of *Lambertson,* that contribution would be confined solely to the tortfeasors, and could in no way benefit appellant.

If we decide that Stenberg is an "employer" for purposes of the Workers' Compensation Act and impose liability for workers' compensation payments, it does not seem to me that we can then say, for purposes of a civil action, Stenberg is not an "employer." Section 176.031 clearly states that the liability of the employer is exclusive:

> The *liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee,* his personal representative, * * *.

Minn.Stat. § 176.031 (1986) (emphasis added).

The Minnesota Supreme Court has recently had the opportunity to expand the employers' liability under the exclusive remedy provision but has declined to do so. *See Kaess v. Armstrong Cork Co.,* 403 N.W.2d 643 (Minn.1987). In *Armstrong,* the supreme court noted:

> Through the years we have upheld the legislative mandate of the exclusive remedy provision by maintaining the narrowness of the intentional tort exception. * * * We reiterated the exclusivity of the Workers' Compensation Act insofar as it provided *any* compensation to an employee for accidental or other injuries suffered by the employee.

*Id.* at 644 (emphasis added) (citations omitted).

Previous decisions by the supreme court bar double liability on behalf of the employer. *See Wandersee v. Brellenthin Chevrolet Co.,* 258 Minn. 19, 102 N.W.2d 514 (1960). There, the Minnesota Supreme Court held:

> Another rule which has grown out of the administration of the Workmen's Compensation Act in this state is that the *injured employee will not be permitted a double recovery. He is not permitted to keep both the amount of his damage compensation award and the amount of his common-law recovery.* If the common-law damage action is brought by the injured employee, the employer is permitted to deduct from any compensation payable to him by the net amount of the employee's recovery in his damage

action; and if the damage action is brought by the employer, the employer is required to pay to the injured employee only that amount of the net recovery in excess of the amount of compensation payable by the employer. This means that the employer receives or is credited with so much of the common-law recovery as is necessary to reimburse the employer for his compensation outlay. *The injured employee therefore receives either the common-law recovery or the statutory compensation, whichever is greater, but not both.*

*Id.* at 23, 102 N.W.2d at 517 (emphasis added).

I would affirm the trial court's entry of summary judgment.